PHILADELPHIA DRESS JOINT BOARD, An Unincorporated Association by William Ross, Trustee Ad Litem, affiliated with the International Ladies' Garment Workers' Union, 929 North Broad Street, Philadelphia, Pa.

v.

Jesse J. ROSINSKY, Individually and trading as H. H. Rosinsky & Company, 2026 E. Hagert Street, Philadelphia, Pa.

Civ. A. No. 17731.

United States District Court
E. D. Pennsylvania.

July 11, 1955.

M. Herbert Syme, Philadelphia, Pa., for plaintiff.

James L. Price, Philadelphia, Pa., for defendant.

LORD, District Judge.

The case is before this Court on plaintiff's Motion for Judgment on the Pleadings.

Prior to this motion, the plaintiff had filed a Complaint and Motion to Confirm Arbitration Award and Enter Judgment Thereon under authority of the Federal Arbitration Act of 1947, c. 392, 61 Stat. 669, 9 U.S.C.A. § 9, and Section 301 of the Labor Management Relations Act of 1947, c. 120, 61 Stat. 156, 29 U.S.C.A. § 185.

The defendant filed Motions to Dismiss on the grounds of lack of jurisdiction and failure to set forth a cause of action. This Court denied defendant's Motions on March 2, 1955 on the authority of Tenney Engineering, Inc., v. United Electrical Radio & Machine Workers of America, 3 Cir., 1953, 207 F.2d 450. The defendant then filed his Answer to Plaintiff's Complaint and Motion, and added to the Answer a Counter-Claim to Vacate and/or Correct said Award. The plaintiff thereupon filed its Answer to the Defendant's Counter-Claim and a Motion for Judgment on the Pleadings.

If material issues of fact are raised by the pleadings, a Motion for Judgment on the Pleadings must be denied. Edelman v. Locker, D.C.E.D.Pa. 1946, 6 F.R.D. 272. This Court believes that in the present case no such issues of fact arise. Although defendant argues to the contrary, the issues of fact listed by defendant in his brief are really questions of law or, at most, immaterial questions of fact.

To dispose of plaintiff's motion it is necessary to analyze the pleadings and exhibits filed in this matter. Plaintiff's Complaint alleges that plaintiff and defendant entered into a collective bargaining agreement providing for arbitration of grievances. It further avers that the Pennsylvania Superior Court had affirmed[1] an Order of the lower court[2] directing the defendant to arbitrate the grievances of the plaintiff under the contract. The Pennsylvania Supreme Court refused an allocatur, October 6, 1953. The parties then proceeded to arbitration. The Arbitrators found in favor of

---

1. Joint Board of Waist and Dressmakers' Union of Philadelphia v. Rosinsky, 1953, 173 Pa.Super. 303, at pages 306, 307, 98 A.2d 447, at page 449:

"Plaintiff in this case, by bringing this action in equity for a mandatory decree, chose the appropriate procedure to compel performance of its agreement with the defendant arising from his membership in the Association. The agreement provided for common-law arbitration by submission of complaints, disputes or grievances arising between the parties to an Impartial Chairman in accordance with its terms."

"The appellant in this case will be obliged to submit to the arbitration of the grievances filed against him by the plaintiff Union in accordance with the arbitration clauses of the collective bargaining agreement between the Union and Philadelphia Waist and Dress Manufacturers' Association by which he agreed to be bound.

"The mandatory decree to that effect is affirmed."

2. Final Decree.
   1. Defendant Jesse J. Rosinsky, individually and trading as H. H. Rosinsky & Company, shall, within twenty days hereof, proceed to arbitration of such grievances filed against said defendant by the plaintiff, Joint Board of Waist and Dressmakers' Union of Philadelphia, as apply to the period August–October 1946 to January 31, 1951; the said arbitration to be held before Permanent Impartial Chairman Dr. George W. Taylor, or the Permanent Associate Chairman, William E. Simkin, as provided by the arbitration clauses of the collective bargaining agreement of June 28, 1946 (as extended by the Mediation Award of December 11, 1948), between Philadelphia Waist and Dress Manufacturers' Association and Joint Board of Waist and Dressmakers' Union of Philadelphia.

the plaintiff and directed defendant to pay the sum total of $45,169.81. The defendant refused to pay; accordingly this action was instituted.

Authority to confirm this award and grant judgment thereon is conferred by the Federal Arbitration Act of 1947, supra.[3] All requirements of this Act have been complied with by plaintiff.

The defendant in his Counter-Claim to Vacate and/or Correct the Award raised twelve matters as a defense. The substance of these defenses can be classified into two main groups as follows:

(1) The Commonwealth Court directed arbitration of only two grievances,[4] whereas testimony was taken and awards made on four more grievances. The defendant claims to have been prevented from presenting testimony on these matters and thereby was deprived of a jury trial on the issue of whether there was a contract to arbitrate. Further, that the contract did not specifically provide for arbitration of these additional grievances.

(2) The Arbitrator exceeded his powers and his conclusions were not supported by the evidence.

3. (a) The pertinent provision of Section 9 of the Arbitration Act states:

"9. Award of arbitrators; confirmation; jurisdiction; procedure

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. * * *"

(b) Section 10 states:

"10. Same; vacation; grounds; rehearing

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

(c) Section 11 states:

"11. Same; modification or correction; grounds; order

"In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

4. Violations of paragraphs 7 and 12 of the 1940 Agreement between the parties.

The first defense presents a more difficult problem than the second, although its solution can be determined readily. In the proceeding by bill in equity before the Court of Common Pleas of Philadelphia County, there was no effort to limit the issues to arbitration of grievances arising from the violations of only paragraphs 7 and 12 of the Agreement. Although the original bill stated that the plaintiff desired to arbitrate grievances involving the violations of these paragraphs, that in itself did not preclude the plaintiff from arbitrating other grievances, if the arbitration agreement itself permitted it. Defendant's contention in the equity proceedings was simply that he was not a party to the arbitration Agreement and that he had a different oral agreement with the plaintiff (Page 34a of plaintiff's Exhibit "B"). The only issue at the equity hearing was whether the defendant was bound by the written collective Agreement between the Association and the Union. (Page 38a of plaintiff's Exhibit "B").

At no time, does it appear, did the defendant object to the additional grievances, to the presentation of testimony in support thereof, or to their consideration by the Arbitrators. There is no indication that the defendant appealed to the State Court when these grievances were added. As an additional reason for holding this defense invalid, this Court (without further discussion) believes that the four added grievances are legitimate offspring of the original grievances listed in paragraphs 7 and 12 [5] of the 1940 Agreement.

Defendant's request for jury trial on this matter is not merited, for the same reasons expressed by the Common Pleas Court in the initial judicial proceedings. Judge Sloane, in his adjudication on this point, properly said (pages 74a, 75a of plaintiff's Exhibit "B"):

The point most strongly urged by defendant is that he is entitled to a jury trial of the issue of his contractual relation with the Union before the question of enforcement of compulsory arbitration can be considered. In the equity case he requested a jury trial (under the provisions of the Act of 1907, P.L. 440, 12 P.S. § 1227) to determine whether he was bound by the collective bargaining agreement between the Union and the Association, or by an oral agreement between himself and the Union which he wants to show. Since the trial of this case the new Rules of Civil Procedure Governing the Action in Equity have become effective (July 1, 1952), and the above act has been suspended. However by Rule 1513 [12 P.S.Appendix] the court may, on its own motion or upon petition of any party, submit issues of fact to trial by jury. The jury's verdict must be in the form of answers to specific questions and is not binding on the court. In the chancellor's view of the present situation, such a submission would be without point, since the evidence defendant wishes to offer must be rejected and thus would not even get to the jury. There would be nothing for them to decide, for we hold as a matter of law that testimony as to an oral agreement between defendant and the

---

5. 7. Members of the Association shall retain as their permanent contractors those contractors who had been previously registered as such with the Union, except as hereinafter provided, namely: If a member of the Association shall at any time change the character of his product, and the Contractors designated by him, or any of them, shall be incapable of meeting his changed requirement, or should a contractor prove to be incapable of serving as such, or should the member of the Association require additional permanent contractors, no substitutions shall be made, or permanent contractors be added, without first securing the consent of the representatives of the Union and Association to such substitution or addition. Members who had not heretofore registered any contractors with the Union shall not employ contractors except with the prior consent of both the Union and Association.

12. There shall be no reduction in wages or in adjusted prices during the life of this agreement, unless mutually agreed upon between the Union and the Association.

Union is not admissible, and that from the admissible evidence in the case defendant was a party to, and bound by, the collective bargaining agreement between the Union and the Association. He was therefore subject to enforcement of its arbitration clauses.

This point was affirmed by the Superior Court.

In arriving at its decision, this Court has given consideration to the *intent* of the parties as it is fully expressed in the written arbitration Agreement.

The grievance clause provides in part as follows:

"30. Should the representatives of the Union and the Association fail to agree on any dispute, then all complaints, disputes or grievances arising between the parties hereto involving questions of interpretation or application of any clause of this agreement, or relation between the parties and their respective members, shall be submitted to the Impartial Chairman, and his decision shall be binding upon the parties hereto."

(By way of explanation, the Agreement of 1940 was incorporated by reference into the Agreement of 1946)

That this all-inclusive clause pertains to *all* disputes involving *any* of the clauses in the Agreement, is made clear by the third Whereas clause of the Agreement, which reads as follows:

"Whereas, the parties hereto desire to cooperate in an effort to establish conditions in the industry which will tend to secure to the workers a living wage, to eliminate unfair conditions of labor, *and provide methods for fair and peaceful adjustment of all disputes that may arise between employer and employee so as to secure uninterrupted operation and general stabilization of the industry;*" (Emphasis supplied)

Defendant argues that courts have interpreted similar "all-inclusive" arbitration contracts and found them non-applicable to circumstances such as are present here. His contention is that the provisions for arbitration should be narrowly construed and that the term "any dispute" between the parties is subject to restrictive interpretation. He cites United Electrical, Radio and Mach. Workers of America v. Miller Metal Products, Inc., 4 Cir., 1954, 215 F.2d 221; Harris Hub Bed & Spring Co. v. United Elec. Radio, D.C.M.D.Pa.1954, 121 F. Supp. 40; Metal Polishers, etc. v. Rubin, D.C.E.D.Pa.1949, 85 F.Supp. 363, and Engelking v. Independent Wet Wash Co., 1931, 142 Misc. 510, 254 N.Y.S. 87.

But, the Metal Polishers, Engelking and United Electrical, R. & M. Workers cases, supra, merely maintain the principle that where one of the parties to a collective bargaining agreement acts in clear violation of the agreement and ignores the arbitration clause, the other party may consider the agreement breached and can sue for damages for the breach or for an injunction, and the "all inclusive" arbitration clause does not compel him to arbitrate.

In the cases of Harris Hub Bed & Spring Co. and United Electrical, Radio and Mach. Workers, supra [215 F.2d 223], the Union went on strike in violation of a "no-strike clause" and an arbitration provision in the agreement. Likewise in the Metal Polishers case, the employer engaged in a "lockout" in violation of its "no lockout" and arbitration clauses. In these three cases the court permitted the injured party to sue for damages on the theory that the arbitration clause is limited to interpretation of the contract and to disputes and grievances arising therefrom, and not to arbitration of damages arising from the fact that one of the parties has completely ignored the contract. It can well be argued that a party to the contract has no right to insist on the observance of the arbitration clause when he has ignored the arbitration clause by going out on strike or lockout, thereby nullifying the whole collective agreement. In essence, these cases hold the injured party

**612**

is given the option to either sue in damages or insist upon arbitration under the agreement. In addition, they do not deal with "grievances" as does the present case but consider only "no strike" and "no lockout" provisions.

In the case at bar the plaintiff Union did not go out on strike, nor did it breach the contract. On the contrary, it charged that the defendant employer had violated the contract, and it then sought by the use of the arbitration clause to pursue its remedies. Here, the innocent party (the plaintiff) seeks to enforce arbitration over the objections of the defaulting party (the defendant). In the cases cited by the defendant, it was the defaulting party who sought to prevent the innocent party from collecting damages or securing an injunction by insisting on arbitration after the defaulting party had refused to use the arbitration clause in the first place. That is not the situation here and those cases, accordingly, have no application to the present issue and are not controlling.

The language of the present Agreement indicates an intent to give broad arbitration powers. This intent should be enforced by liberal interpretation. See Philadelphia Marine Trade Ass'n v. I. L. A., 24 L.A. 343 (C.P. 1, Phila. 1955), affirmed, per curiam, by the Pennsylvania Supreme Court on April 27, 1955, 24 L.A. 346; 115 A.2d 419; 115 A.2d 733; Fox v. The Giuseppe Mazzini, D.C.E.D.N.Y.1953, 110 F.Supp. 212, and Lewittes & Sons v. United Furniture Workers of America, D.C.S.D.N.Y.1951, 95 F.Supp. 851. As Judge Goodrich, of this Circuit, said in Donahue v. Susquehanna Collieries Co., 3 Cir., 1943, 138 F.2d 3, 6, 149 A.L.R. 271, in interpreting the Federal Arbitration Act of 1925 (now re-enacted as the Act of 1947):

"As indicated above, we think the Act is entitled to a construction which will accomplish its purpose, and should not be hedged about with imagined limitations, as has been done in some instances."

For the foregoing reasons, this Court believes that all grievances heard and decided by the Arbitrators in the present case were properly arbitrable and were encompassed in the Agreement.

■ Defendant's second defense concerning the lack of sufficient evidence to justify the Arbitrators' conclusions and the abuse of the Arbitrators' powers is of little substance. The Arbitrators' authority was not limited in any material way by the Agreement. In such cases, an arbitrator's decision is the final judge of both law and fact, and the award will not be reviewed or set aside for mistakes in either. Goldstein v. International Ladies' Garment Workers' Union, 1938, 328 Pa. 385, 389, 196 A. 43. See also Bower v. Eastern Airlines, 3 Cir., 1954, 214 F.2d 623, 625.

■ The details of payment, and of extensive findings need not be reviewed. This Court believes qualified experts in the field of labor arbitration have decided a complicated case in a proper proceeding. The Arbitrators have not exceeded or abused their powers. There are insufficient reasons to vacate, modify, or correct the award under Sections 10 and 11 of the Arbitration Act, supra, Footnote 3. Further litigation (or more properly, "re-litigation") is not warranted.

Accordingly, plaintiff's Motion for Judgment on the Pleadings is hereby granted. An appropriate Order will be submitted by counsel.